UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| Bruce Meskill, as Trustee for the heirs and next-of-kin of Howard V. Meskill, | Case No. |
| Plaintiff, | **COMPLAINT** |
| vs. | |
| GGNSC Stillwater Greeley LLC, d/b/a Golden LivingCenter – Greeley, | **JURY TRIAL DEMANDED UNDER FED R. CIV. P. 38(b)** |
| Defendant. | |

Plaintiff Bruce Meskill, as Trustee for the heirs and next-of-kin of decedent Howard Meskill, states the following for his Complaint against the above-named Defendant:

1. On August 11, 2010, Bruce Meskill was appointed Trustee for the next-of-kin of decedent Howard Meskill by Order of the Honorable Dale B. Lindman of the Ramsey County District Court.

2. This action is brought by Bruce Meskill in his capacity as Trustee pursuant to the Minnesota Wrongful Death Statute, Minn. Stat. § 573.02. Bruce Meskill is Howard Meskill's natural child.

3. The other heirs and next-of-kin of Howard Meskill, together with their relationship to the decedent, are as follows: Joyce A. Hilla (sister); David C. Meskill (son); and John H. Meskill (son).

4.      At all times material herein, Trustee Bruce Meskill was a resident of Somerset, Wisconsin.

5.      Defendant GGNSC Stillwater Greeley LLC is a Delaware limited liability company.

6.      GGNSC Stillwater Greeley LLC is doing business as Golden LivingCenter – Greeley ("Golden Living") at 313 South Greeley Street, Stillwater, MN 55082, and is therefore subject to personal jurisdiction in Minnesota.

7.      GGNSC Stillwater Greeley LLC's sole member is GGNSC Equity Holdings LLC.

8.      GGNSC Equity Holdings LLC's sole member is Golden Gate National Senior Care LLC.

9.      Golden Gate National Senior Care LLC's sole member is GGNSC Holdings LLC.

10.     GGNSC Holdings LLC's sole member is Drumm Corp., a Delaware Corporation with its principal place of business in California.

11.     For purposes of diversity jurisdiction, Plaintiff is diverse from Golden Living because Golden Living and its member and sub-members derive their citizenship from Drumm Corp.

12.     The matter in controversy exceeds the sum or value of $75,000 and, therefore, jurisdiction is conferred properly by 28 U.S.C. § 1332.

13.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in Minnesota.

14.     The document titled "Resident and Facility Arbitration Agreement" in Howard Meskill's file is not enforceable because the National Arbitration Forum is not available as a forum.

15.     The names of the individual tortfeasors employed by defendant cannot be identified by the records available to plaintiff at this time and are therefore referred to in the Complaint as John Does.

## FACTUAL BACKGROUND

16.     At all times material herein, Howard Meskill ("Meskill") was an 83-year-old man.

17.     Meskill was admitted to Golden Living on September 9, 2009, and later that day fell while in a bathroom at Golden Living.  Golden Living staff members were present with Meskill at the time he fell.  Meskill informed the staff members that he had a history of falls, and that he rolls around during sleep and has fallen from bed before.  Meskill's care plan was updated, which included putting a commode close to his bedside and putting a PPA alarm in place.

18.     Meskill fell again on September 22, 2009.  He fell asleep in his wheelchair and then fell forward striking his head.  A PPA alarm was placed in Meskill's wheelchair for intervention.

19.     A September 23, 2009 OT note, states that Meskill was "trained in safe transfers" and that he "remains @ risk for falls & [increased] burden of care for dressing, toileting, & bed mobility."

20.     Meskill fell again on September 25, 2009, this time rolling out of bed when trying to turn.  Meskill informed the nurses that he had rolled out of bed on prior occasions at his home.

21.     Meskill fell again on September 29, 2009, once again falling from his wheelchair after falling asleep.

22.     A September 2009 "Plan of Care" also mandates that the Golden Living staff "use 3 people for treatment.  One to stand at head of bed in case spasm occurs."  It is impossible to note the precise date that either of these entries were written because Golden Living maintained improperly altered medical records.

23.     An October 1, 2009 "Nurse's Note" states that there was a "[f]alls prevention strategy in place" for Meskill.

24.     An October 9, 2009 physical therapy note indicated that Meskill was suffering from c-difficile (infection), which made him "much more fatigued" and required "[increased] assistance with functional mobility."  One occupational therapy note from that date also notes that Meskill was at "full risk."

25.     On October 15, 2009, it was reported in a "Nursing Home Note" that Meskill scored a 13 out of 20 on the safety screen (i.e., "fairly poorly").

26.     Meskill fell from his bed again on October 23, 2009.  He was placed back in bed using a "hoyer lift."  It was again noted that Meskill's "legs do tend to move around on their own. . ."

27.     An October 30, 2009 physical therapy note stated that Meskill required increased assistance with all mobility.

28.     A November 6, 2009 occupational therapy note stated that Meskill was experiencing decreased sensation and increased weakness in his legs and feet.

29.     Meskill fell again on November 7, 2009, while "doing usual activities." He was found on the floor next to his bed, and it was noted that he suffered a skin tear on his left arm. In order to ensure Meskill's safety following this fall, it was stated in a "Post Fall Investigation Summary" that a blue foam mat should be placed next to his bed, and that his bed should be kept in the lowest possible position.

30.     In November 2009, it was noted that Meskill was moved via hoyer lift for all transfers because he was unable to stand or ambulate.

31.     On or around December 9, 2009, Meskill's Clinical Health Status score indicated that he was a risk for falls, and that his risk had increased from prior assessments.

32.     A December 23, 2009 nurse's note indicated that Meskill was experiencing "increased non-voluntary movements of his legs during treatment."

33.     On or around January 3, 2010, it was noted by nurse Tracey Daniel that Meskill remained "a high risk for falls."

34.     Meskill was mishandled by John Doe staff members during treatment on January 25, 2010, which resulted in Meskill striking the floor with his head. As a result of hitting the floor, it was initially observed that Meskill sustained a laceration to his head with discoloration and swelling, in addition to neck pain and difficulty moving his right arm. It was later determined that Meskill suffered vertebral fractures as a result of this incident.

35.     Upon information and belief, at the time Meskill was mishandled on January 25, 2010, there was not a mat on the floor, the bed was not in a lowered position, nor was

there a third staff member present, despite the fact that those preventative measures had previously been prescribed for Meskill in light of the fact that Meskill's high risk for falls was well-understood.

36.     Meskill died on January 28, 2010 as a result of the trauma associated with the vertebral fractures he sustained on January 25, 2010.

37.     The State of Minnesota Death Certificate records the Medical Examiner's conclusion:  "Cause of Death:  Immediate-Cardiorespiratory Failure/Underlying-Vertebral Fractures; Fall to Floor."

## COUNT ONE
### (Negligence – Golden Living)

38.     Plaintiff realleges the allegations set forth in each of the preceding paragraphs.

39.     Golden Living owed a duty to care for and protect Meskill.

40.     Golden Living breached its duty to care for and protect Meskill by failing to properly supervise or monitor its employees, and by otherwise creating an environment that caused Meskill to fall and sustain severe injuries that ultimately caused his death. Defendant's negligence includes, but is not limited to: failing to implement reasonable policies and procedures to ensure that staff follows all plans/orders relating to patient care; failing to train patient care staff in a manner consistent with the standard of care governing their duties; failing to adequately investigate, document, or report deficiencies in patient care; and failing to discipline staff who deviate from the applicable standard or care and/or fail to follow plans/orders relating to patient care.

41.     Meskill died as a direct and proximate result of Golden Living's negligence.

42.     As a direct and proximate result of Golden Living's negligence, Meskill's next-of-kin have suffered and in the future will suffer permanent and substantial personal and pecuniary loss, as well as deprivation of the advice, counsel, comfort, protection, support and companionship of the decedent, and other damages in an amount exceeding $75,000.

43.     Attached as Exhibit A is an Affidavit of Expert Review pursuant to Minn. Stat. § 145.682.

**COUNT TWO**
(Professional Malpractice – Golden Living)

44.     Plaintiff realleges the allegations set forth in each of the preceding paragraphs.

45.     The actions of Golden Living set forth above violated the applicable standard of professional care.

46.     Meskill died as a direct and proximate result of Golden Living's malpractice.

47.     As a direct and proximate result of Golden Living's malpractice, Meskill's next-of-kin have suffered and in the future will suffer permanent and substantial personal and pecuniary loss, as well as deprivation of the advice, counsel, comfort, protection, support and companionship of the decedent, and other damages in an amount exceeding $75,000.

**COUNT THREE**
(Vicarious Liability – Golden Living)

48.     Plaintiff realleges the allegations set forth in each of the preceding paragraphs.

49.     At all times material herein, the John Does were employees of Golden Living, acting within the course and scope of their employment.

50.     The John Does breached their duty to care for and protect Meskill by allowing him to fall and sustained severe injuries that ultimately caused his death.

51.     The actions of the John Does violated the applicable standard of professional care.

52.     Meskill died as a direct and proximate result of the John Does' negligence and malpractice.

53.     As a direct and proximate result of the John Does' negligence and malpractice, Meskill's next-of-kin have suffered and in the future will suffer permanent and substantial personal and pecuniary loss, as well as deprivation of the advice, counsel, comfort, protection, support and companionship of the decedent, and other damages in an amount exceeding $75,000.

54.     Defendant Golden Living is vicariously liable for the negligence and/or malpractice of the John Does under the doctrine of respondeat superior.

55.     Plaintiff anticipates amending the pleadings to add claims against the individual John Doe defendants.

WHEREFORE, Plaintiff Bruce Meskill as trustee for the next-of-kin of Howard V. Meskill, prays for judgment as follows:

1.     As to Counts One, Two, and Three, a money judgment against defendant Golden Living each in an amount in excess of $75,000 together with interest, costs and other relief the Court deems appropriate under the circumstances; and

2.     For such other and further relief as this Court deems just and equitable.

**GASKINS BENNETT BIRRELL SCHUPP LLP**

Dated: _____3/30_____, 2012 _____

Robert Bennett, #6713
Andrew J. Noel, #322118
Jeffrey S. Storms, #387240
333 South Seventh Street, #2900
Minneapolis, MN 55402
Telephone: 612-333-9500
Attorneys for Plaintiff